5 F.3d 541
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Perry FROGGE, aka Jack Manion and Jock Manion,
Defendant-Appellant.
 No. 92-10724.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided Sept. 14, 1993.
 
 1
 Appeal from the United States District Court for the District of Nevada, No. CR-91-00106-HDM; Howard D. McKibben, District Judge, Presiding.
 
 
 2
 D.Nev.
 
 
 3
 AFFIRMED.
 
 
 4
 Before: REAVLEY,* PREGERSON and FERNANDEZ, Circuit Judges
 
 
 5
 MEMORANDUM**
 
 
 6
 Robert Perry Frogge appeals from convictions of two counts of bank robbery and two counts of use of a firearm in relation to a crime of violence in violation of 18 U.S.C. Secs. 2113, 924(c). We affirm.
 
 BACKGROUND FACTS
 
 7
 On October 23, 1991, the California Federal Bank in Sparks, Nevada, was robbed of $6,748 by a man who pointed a gun at the tellers and demanded that they put money in a gym bag. On November 14, 1991, a robber wearing a blue striped shirt, gray slacks, a "Members Only" jacket and black loafers, entered the Valley Bank of Sparks, Nevada, waving a gun and demanding money. Bank employees placed a "beeper pack" with the money in the robber's gym bag. Within 10 minutes of the robbery, the beeper signals were traced to the car in which Frogge was sitting. Frogge was wearing a blue striped shirt, gray slacks and black loafers. The robber's ski mask and jacket were found on the floor of the car. The money, beeper and a revolver were retrieved from the trunk. Frogge's picture appeared in the Reno Gazette Journal after the second robbery. Three employees from the first robbery identified the picture of Frogge in the newspaper as the person who robbed them. Frogge testified that he had a cast on his arm during the time of the robberies. He claimed that Don Adams, who looked like Frogge, had borrowed his car and returned it shortly before the police arrived.
 
 DISCUSSION
 
 8
 A. Ineffective Assistance of Counsel.
 
 
 9
 Frogge identifies several specific errors and omissions of trial counsel which he claims amount to ineffective assistance of counsel. To prevail, Frogge must demonstrate that counsel's performance was deficient and that Frogge was prejudiced. E.g., Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
 
 1. Cast and Booking Photos
 
 10
 Frogge's arm cast was removed while he was in custody. Counsel requested the cast from the U.S. Marshal but was informed that the Marshal did not have it. Counsel reasonably believed that it had been discarded. Counsel's failure to ask for booking photographs is not surprising; that is not the kind of evidence that defense counsel usually wants to put before a jury. Counsel did not act "outside the wide range of professionally competent assistance" in failing to do more. See Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 
 2. Dr. Mishler
 
 11
 Frogge claims that counsel should have subpoenaed Dr. Mishler, the surgeon who placed Frogge's arm in the cast, to testify at trial. Dr. Mishler was ambiguous with respect to whether the cast prevented Frogge from gripping the gun and gym bag. Based on his professional experience, it was trial counsel's opinion that no doctor would testify that holding the items was impossible. Because the testimony would not have aided the defense, counsel acted reasonably in deciding not to subpoena the doctor.
 
 3. Witnesses
 
 12
 If one of the bank employees testified that the robber wore a cast, the defense would have collapsed. Therefore, counsel decided not to question the bank witnesses about the cast. Counsel did elicit testimony from a police officer, FBI agent and Frogge that Frogge wore a cast at the time of arrest. Counsel was then able to argue that none of the bank witnesses mentioned a cast, yet there was undisputed evidence that Frogge had a cast. Counsel's strategy for examining the bank witnesses was competent, as was his decision not to call the Valley Bank employee who had told investigators that she did not believe the robber had a cast. See United States v. O'Neal, 937 F.2d 1369, 1376 (9th Cir.1990).
 
 4. Theory of Defense Jury Instruction
 
 13
 Frogge claims that counsel was ineffective because he failed to request a "mistaken identity" instruction. A general instruction on credibility of witnesses and the government's burden of proof on the issue of identification is ordinarily sufficient. United States v. Miranda, 986 F.2d 1283, 1285-86 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2393, 124 L.Ed.2d 295 (1993). The Ninth Circuit Jury Committee recommends that an eyewitness identification instruction should not be given. 9th Cir.Crim.Jury Instr. 4.13 comment (1992). Because the jury instructions were proper and fairly presented Frogge's theory of defense, counsel was not incompetent in failing to request a "mistaken identity" instruction.
 
 5. Lack of physical evidence
 
 14
 Frogge alleges that he was prejudiced by the government's failure to preserve evidence and by defense counsel's failure to test the fingerprints, hair samples and gun. The jury knew that fingerprints had been recovered and could infer that none of the prints matched Frogge. Independent tests would have been cumulative. Even if hair samples had been recovered, tested and determined not to belong to Frogge, that would not prove that Frogge was not the robber. If they were Frogge's, the results would have become available to the government. Because additional testing would not necessarily have aided the defense and might have hurt it, counsel did not act unreasonably in failing to conduct that testing, given the overall aspect of the case.
 
 6. Newspaper quote
 
 15
 The secondhand quotation of trial counsel, printed in the San Ramon Valley Times, does not demonstrate that counsel had predetermined that Frogge was guilty. Neither the newspaper quote nor counsel's performance at trial demonstrates a genuine breakdown in the adversarial process or that counsel's performance was otherwise deficient. See United States v. Baldwin, 987 F.2d 1432, 1437-38 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993).
 
 7. Failure to subpoena employer
 
 16
 On the eve of trial, Frogge told counsel that Mr. Krug might be a potential alibi witness for the October 23 robbery. Counsel contacted Krug and determined that he did not have any helpful information. Counsel was not required to do more.
 
 8. Evidence of Third Robbery
 
 17
 Frogge also argues that defense counsel was ineffective because he successfully opposed the government's attempt to impeach Frogge with evidence of a third, uncharged bank robbery which occurred in Sacramento on October 29. This claim was not raised in the motion for new trial and may not be considered on appeal. E.g., United States v. Whitten, 706 F.2d 1000, 1012 (9th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). In any event, counsel cannot be considered incompetent for opposing the evidence. The potential for confusion and prejudice to Frogge from evidence of a third robbery is obvious.
 
 
 18
 None of the errors identified by Frogge were outside the range of professionally competent assistance. The district court properly denied Frogge's ineffective assistance claim.
 
 B. Motion to Sever
 
 19
 To the extent that Frogge claims error in the denial of his motion to sever the two robberies, that claim is waived by Frogge's failure to renew the motion at the close of evidence. United States v. Davis, 932 F.2d 752, 762 (9th Cir.1991).
 
 C. Brady Violation
 
 20
 Brady v. Maryland requires the prosecution to disclose evidence to the defense that is both favorable to the accused and material to guilt or punishment. 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.
 
 
 21
 The booking photographs show that the cast was from below the elbow to below the knuckles which join the fingers to Frogge's right hand. In each of the photographs of the November 14 robbery, the robber's right wrist is fuzzy and bulky, which suggests that the robber was wearing a cast. Thus, the cast and photographs were neither exculpatory nor material to the November 14 robbery charges. Furthermore, the evidence of Frogge's guilt of that robbery was overwhelming to say the least. We are unable to say that the result of Frogge's trial on Counts 3 and 4 would have been different had the cast and booking photographs been available.
 
 
 22
 The parties agree that Frogge did commit the October 23 robbery, if he committed the November 14 robbery. He did commit the latter. Thus, he also committed the former.
 
 D. Comment on Frogge's Post-Arrest Silence
 
 23
 Frogge points to four references to his post-arrest silence which he claims violated Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Generally, Doyle is not violated if the trial court sustains a timely objection, instructs the jury to disregard the question, and gives a curative instruction. See Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987). Thus, the answer given by Officer Norman and the question posed to Frogge do not require reversal. Officer Norman's answer does not violate Doyle for the additional reason that it described events before Frogge was advised of his Miranda rights. See United States v. Baker, No. 92-10552, slip op. 7463, 7469, 1993 WL 259502 (9th Cir. July 15, 1993).
 
 
 24
 If Agent Wick's statement violated Doyle, it was nevertheless harmless error. Defense counsel explored on cross-examination and stressed in closing argument that a defendant's invocation of the right to remain silent may not be used against him. The prosecutor's statements in closing argument focused on the incredibility of the story rather than on the fact that Frogge did not tell the story earlier, and other evidence linked Frogge to the robberies (photographs, cash, gun and clothing worn by robber). Cf. Baker, slip op. at 7469-73; United States v. Newman, 943 F.2d 1155, 1157-58 (9th Cir.1991). Thus, there was no error, but if there were, it was harmless.
 
 E. Prosecutorial Misconduct
 
 25
 As long as the prosecutor's argument does not implicate the defendant's right not to testify, a comment on the defendant's failure to call a witness does not shift the burden of persuasion. United States v. Williams, 990 F.2d 507, 510 (9th Cir.1993). Frogge testified at trial. Therefore, the prosecutor's comment regarding Frogge's failure to call Dr. Mishler did not violate Frogge's constitutional rights.
 
 
 26
 Frogge also complains about the prosecutor's statement that the government felt that tests of the fingerprints and hair samples were not the best use of resources and the other evidence was sufficient to obtain a conviction. The prosecutor's remarks were invited by defense counsel's closing argument. The remarks were not based on the prosecutor's personal knowledge of matters outside the record. They were of the "you don't kill a gnat with a sledge hammer" variety. They were not improper. See United States v. Hill, 953 F.2d 452, 460 (9th Cir.1991).
 
 F. Search of Car
 
 27
 The police had probable cause to believe that contraband was in the trunk of the car in which Frogge was sitting. Within 15 minutes of the robbery, the police tracked the beeper signals to Frogge's car and a handheld tracking device indicated that the beeper pack was in the trunk. Given the legitimate stop of the car and probable cause to believe that the stolen money was in the trunk, the police did not need a warrant to open the trunk. See United States v. Ross, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982).
 
 G. Cumulative Error
 
 28
 None of the errors claimed by Frogge, whether considered individually or cumulatively, warrant reversal. See Baldwin, 987 F.2d at 1439; United States v. Necoechea, 986 F.2d 1273, 1283 (9th Cir.1993).
 
 
 29
 H. Sentence Enhancement.
 
 
 30
 Frogge's argument that the district court erred in sentencing him on the second firearm count is foreclosed by Deal v. United States, --- U.S. ----, 113 S.Ct. 1993, 1996, 124 L.Ed.2d 44 (1993).
 
 
 31
 AFFIRMED.
 
 
 
 *
 Hon. Thomas M. Reavley, Senior United States Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3